### DOCTOR JACK (An Indian), PLAINTIFF IN ERROR,

*v.*

### THE TERRITORY OF WASHINGTON, DEFENDANT IN ERROR.

The trial Court, in a criminal prosecution, is authorized after the return of a jury into Court with its verdict, but before the reception of the same, to correct any erroneous instruction that may have been given—and send the jury back to deliberate upon a verdict, under the instructions as altered.

In such case, the presumption is, the jury returned a verdict pursuant to the instructions as corrected.

In this case, there being no evidence tending to show the fatal blow was accidental or in self defense, it was not necessary for the Court, in charging the jury, to so qualify the instructions as to meet a case of accident or self-defense.

The distinction between an exhibit and the testimony of a witness, whether oral or in writing, pointed out.

In applying the liberal rule of construction prescribed in Section 758, of the Code of 1881, to Section 231 of the same Code, which provides, among other things, that the jury may take to their room all *papers* admitted in evidence, it was not error on part of the trial Court to permit the jury to take to their room a hat and blood-stained garment that had been admitted in evidence; the intention of the legislature being to give the jury the representations made upon or the ideas conveyed by the tangible matter termed paper, and not to narrow the term to its literal meaning.

By necessary implication, Section 1105 of the Code authorizes the Court to permit such evidence to be taken to the jury room.

ERROR, to the Third District Court, holding terms at Seattle.

A sufficient statement of facts is made in the opinion of the Court.

*Burke & Rasin* and *J. C. Haines*, for Plaintiff in error.

Allowing the jury to take to their jury room the shirt and hat admitted in evidence was error. (Thompson's Charging the Jury, Sec. 100; *Benson* v. *Fish*, 6 Greenleaf, 141; *Merril* v. *Nary*, 10 Allen, Mass., 416; *Outlaw* v. *Hurdle*, 1 Jones L., N. C., 150; *Weston* v. *Davis*, 7 Jones L. N. C. 178; *Rawson* v. *Curtis et al.*, 19 Illinois, 479.)

Section 231 of the Code of Washington does not sustain the action of the Court.

It devolves on the prosecution to show that such was without prejudice to the prisoner. (*State* v. *Lautz*, 23 Kansas, 728; 33 American Reports, 215.)

*Elwood Evans*, Prosecuting Attorney, for Defendant in error.

The taking by the jury of the hat and coat was not error—even if objected to, which was not done.

The matter was in the Court's discretion. (Wharton's Maxims, 336–7, Secs. 6, 7, and 8; *People* v. *Henderson*, 28 Cal. 472; *O'Kelly* v. *Territory*, 1 Or. 59; Proffatt on Jury Trials, Secs. 404–5; Hilliard on New Trials, 174, Sec. 19; Wharton's Am. Crim. Law, 6th ed., Vol. 3, Sec. 3136; *People* v. *Gardiner*, 6 Parker's Crim. Reports, 200; *People* v. *Wilson*, 4 Ib. 619; *People* v. *Bonney*, 19 Cal. 445; *People* v. *Williams*, 24 Ib. 31.)

The modification of the instruction was in the prisoner's favor. (*Wilkeson* v. *Parrott*, 32 Cal. 102.)

The prisoner did not ask for instructions as to self-defense, nor was there any evidence rendering such instruction pertinent. (Hilliard on New Trials, p. 215; *People* v. *Dennis*, 39 Cal. 625: *People* v. *Cleveland*, 49 Ib. 578; *People* v. *Garrand*, 5 Oregon, 226; *People* v. *Lamb*, 17 Cal. 323; *People* v. *Bealoba*, Ib. 389; *Nelson* v. *People*, 5 Parker's Crim. Rep. 50.)

If the transcript does not embody evidence, the applicability of an instruction will not be considered. (Code of Washington, Sec. 257 ; *People* v. *McCauley*, 1 Cal. 379 ; *People* v. *Baker*, Ib. 403 ; *People* v. *Lafuente*, 6 Ib. 202 ; *People* v. *Bonney*, 19 Ib. 426 ; *People* v. *King*, 27 Ib. 507 ; *People* v. *Dick*, 34 Ib. 663 ; *People* v. *Best*, 39 Ib. 690 ; *People* v. *Long*, Ib. 694.)

The alleged errors have worked no prejudice to the prisoner. (Powell Appellate Proceedings, Sec. 315 ; *Terwilliger* v. *Multnomah Co.*, 6 Oregon, 295 ; *People* v. *Walsh*, 43 Cal. 447 ; *People* v. *Brotherton*, 47 Ib. 388 ; *People* v. *Jurley*, 40 Cal. 469 ; *People* v. *Sprague*, 53 Ib. 491.)

Opinion by GREENE, Chief Justice.

Doctor Jack, an Indian, charged with stabbing to death Eliza, an Indian woman, and indicted and tried in the District Court at Seattle for murder in the second degree, was convicted of manslaughter, and sentenced to a term in the penitentiary. Errors supposed to have been committed by the Judge trying the case, and based upon exceptions duly taken and allowed, are assigned here as ground for reversing the judgment, and sending the case back to be tried anew.

By the record, several such errors are presented.

They all, however, relate to but two passages in the trial, and may be considered and decided, most conveniently, as if they constituted but two complaints against its fairness. One is, that the jury were so instructed as to prejudice the defendant; and the other, that a hat and shirt in evidence were wrongly permitted, by direction of the Judge, to be taken by the jury to their room. Regarding these, we speak in their order.

The jury, upon retiring, were given, among others, the following instructions : " Inquire first, whether or not the defendant gave the deceased the knife wound. If, beyond all reasonable doubt, you find it established by the evidence that he did inflict that wound, then defendant must be convicted of some grade of offense ; but if you do not find it so established, you will acquit him entirely. If you find the defendant guilty of giving the knife wound, then you will next consider whether that wound was, in its own nature, dangerous to the life of the deceased, and whether the wound actually contributed to cause

her death.   If, having first found, under these instructions, that defendant inflicted the knife wound, you further find, beyond all reasonable doubt, that the wound was dangerous to the life of the deceased, and actually contributed to her death, then you will be obliged to find that the defendant killed the deceased, and that he is guilty either of manslaughter or of murder in the second degree.   If, on the other hand, you do not find, beyond every reasonable doubt, both that the knife wound was in itself thus dangerous to the life, and that it was actually contributory to the death, you must acquit the defendant of any homicide. Suppose you find the defendant, under these instructions, guilty of homicide, the question that next presents itself is, whether he is guilty of manslaughter or of murder.   Your decision of this question, if you get so far, will depend on whether or not you find the defendant inflicted the knife wound maliciously. If the defendant was at that time in a transport of passion, provoked by abusive words and a violent blow from the deceased, and in that heat of passion stabbed the deceased, then he was not guilty of murder and cannot be convicted of it, for the law will not impute malice under such circumstances ; nor will the law impute malice to the defendant, if he, in sudden heat, caused by any such provocation as would have greatly exasperated a reasonable man in like circumstances, killed the deceased.   If, however, you find beyond a reasonable doubt that the defendant, while not in a heat of passion so induced, and without any just cause or excuse, killed the woman, then you are authorized to find malice, and to find defendant guilty of murder in the second degree."

Of the soundness of these instructions, in one particular, it would seem that the Judge, upon reflection, had some misgiving ; and therefore, when the jury returned with a verdict, he refused to receive it, and sent them out again with the same instructions, modified by simply inserting the word "intentionally" before the words "inflict," "giving," and "inflicted," respectively, where they occur in the first four sentences of the foregoing quotation.   Deliberation on the evidence under the modified instructions resulted in the jury's returning finally into Court, with the verdict upon which the defendant was afterwards sentenced.

Objection is made that the instructions before amendment were wrong, because they excluded both the idea of intent and the idea of self-defense, and that the amendment cured no more than the first of the two defects.    The Judge's power and obligation to amend an erroneous instruction, before he receives the verdict and discharges the jury, even though a verdict has already been agreed upon, while questioned in the argument seem conceded in the briefs.    His duty as to the law is as indisputable as the jury's as to the fact.    Each is bound while the trial is pending, and up to the moment when it is completely ended by the reception of a verdict, to do everything necessary to get at a sound and stable conclusion.    When a jury has reached a certain finding under erroneous instructions, which are afterwards corrected, it will not be presumed in its verdict to have clung against right to that which it found originally.    Having its oath, and those impulses to rectitude which are common to mankind, it will not be presumed to have disregarded either.    On the contrary, it will be presumed to have done its duty, to have applied the corrected law to the testimony, and to have found a verdict that is true.    Looking, however, at all that was before the jury in this case, we fail to see that the District Judge was at fault in his instructions as at first given. Evidence tending to show, or affording any ground to suspect, that the blow, which the jury must have found fatal, was accidental or in self-defense, was totally wanting in the case.    Leading the jury, then, to discuss and ponder whether accident or self-defense existed was uncalled for, and very possibly misleading.    As we view the matter, the instructions as originally given were fair for the defendant, and the subsequent amendment not only cannot be deemed to have prejudiced him, but might be held to have tended to procure for him an erroneous acquittal.    We, therefore, overrule what he has urged against the instructions.

As to the hat and shirt going into the jury room, it is to be presumed that these were exhibits introduced in evidence ; the former as having belonged to defendant, and been found near the place of homicide shortly after the mortal blow was struck, and as tending to show that he left the scene in haste ; and the latter as having been taken off the person of defendant on

the next day after the homicide, with blood stains on its right
wristband and elsewhere, and as tending to show the defendant
guilty of inflicting the blow, in the manner charged by the in-
dictment and described in testimony.   Delivering these articles
to the jury upon their retirement, is said to be equivalent to
sending witnesses to testify before them, away from the super-
vision of the Judge, and in the absence of defendant and his
counsel, and to be incompatible with the provisions of Section
231 of the Code.   Exhibits, as regards their fitness to accompa-
ny the jury to their deliberations, are, we think, to be distin-
guished from witnesses, whether the latter testify orally or in
writing.   By a figure of speech, the former may indeed be said
to testify, but they come upon a stand by themselves, and are
not to be classed with what is strictly testimony; for, having
none of the qualities of personality, telling always (if one will
only listen) the same story, and the whole of all they have to
tell, they are subject to none of the variations of memory and
recital which unfortunately attend the living witness; and are
entirely destitute of partizanship, and of all ability to influence
a jury by feeling, argumentation, or will.   The introduction of
a deposition into the jury room, which is justly condemned by
all the authorities, would generally put before the jury a mix-
ture of competent and incompetent matters, between which they
could not well discriminate ; and would give to one human ut-
terance, merely because it chanced to be written down, an un-
due prominence and effect over other equally or more import-
tant, or reliable, human utterances, which happened to be oral.
On the other hand, the delivery of exhibits to the jury, in all
ordinary cases where they are pertinent, seems to us not only
not to be deprecated, but exceedingly to be desired, as tending
to give, amid the mass of variable quantities that inevitably go
to make up human testimony, certain trustworthy constants,
upon which the mind can lean, and to which, for testing and
harmony, everything else can be brought and made fast.

Referring to Section 231, we find it to read as follows:
" Upon retiring for deliberation, the jury may take with them
the pleadings in the cause, and all papers which have been re-
ceived as evidence in the trial (except depositions), or copies of
such parts of public records or private documents given in evi-

dence as ought not, in the opinion of the Court, to be taken from the person having them in possession." This is a part of the Civil Practice Act. Obviously, it needs construction. Drive the word "papers" down into its own narrow, literal sense, and you absurdly force out of it all the living and precious spirit of this law.

Of what may be *upon* papers, rather than of *the papers themselves*, the legislature is speaking. The writing, diagram, mark or spot which would, under this section, be admissible to the jury room, if on paper, must, according to the liberal construction commanded by Sec. 758 of the Code, be also admissible, if upon bark, bone, wood, cloth, stone, metal, or any other substance. Having got thus far, we are unable to see but that the spirit of the section requires the admission of any exhibit, standing within the same reason, whether it be blank paper or blank anything else, moist or dried, solid or liquid. Ever since, in 1854, this section was first enacted in this Territory, such has been the liberal construction always given it in all the Courts. We hold that it is the correct construction, and that, assuming Section 231 to be applicable in criminal cases, the course of the Judge below, in allowing the hat and shirt to go to the jury, was proper under that section.

However, it is to be remembered that Section 231 is in the chapter prescribing civil practice ; and is not anywhere, by reference or otherwise, expressly adopted as furnishing the rule in criminal procedure. Of such express adoption there was, perhaps, no need ; for probably, in all things except where the statutes plainly indicate the contrary, the practice in criminal cases should be assimilated to that prescribed for other actions at law, the Legislature having, in many particulars, intimated a desire for such assimilation. Let that be as it may, the Legislature has spoken in Section 1105 of the Code, with sufficient clearness to show, as to this very matter of sending exhibits out with the jury in criminal cases, what it intends shall be the law. Expressly, that section states the grounds upon which an application for a new trial shall be granted. Legitimately, it implies that an application not so grounded shall be denied. Among the grounds it specifies, the pertinent ones are as follows :

" 1.   When the jury has received any evidence, paper, document, or book not allowed by the Court, to the prejudice of the substantial rights of the defendant.

" 2.   Misconduct of the jury."

We think that in the statement of the first ground in this section, the word " evidence " means tangible evidence—as a book, paper or document is tangible—tangible things, which have already assumed, in the cause, the character of evidence ; and that the words " paper, document, or book " mean a paper, document, or book not in evidence.

By counsel it is argued that the word evidence, associated as it is, can signify nothing but evidence on paper, *i. e.*, depositions ; but such an effort to make everything in the list papyriform, in order to give effect to the maxim *noscitur a sociis*, unnecessarily strains a point.   Is not the principle of the maxim sufficiently honored, when the word " evidence " has such an interpretation that all the various things embraced are capable of being " received " by the jury in the same way and sense, that is to say, by manual act ?   Both the first and second grounds of the section should be construed together.   Laying them side by side, we gather the legislative intention to be that the reception by the jury, at any time, of any tangible matter in evidence, or of any book, paper, or document not in evidence, when without violating statutory or constitutional right it is allowed by the Court, or when, though not so allowed, it cannot be supposed to be to the prejudice of the defendant's substantial rights, shall not be deemed misconduct in the jury, or good cause for a new trial.

Each of the supposed objectionable passages of the trial having been shown, for the foregoing reasons, to be in harmony with the law, the judgment of the District Court is affirmed.